## McNeeley v. Bookmyer.

*Sales—Contract—Stock—Contemporaneous oral agreement to repurchase —Agreement silent as to repurchase price.*

1. In a contract to repurchase, it is essential that the purchase price be agreed upon, and if no price is named, it is only expressive of a willingness to repurchase at a price to be fixed or agreed upon, and until such agreement is made, there is no definite and binding contract to repurchase.

2. A promise to buy back stock if the buyer is not satisfied with it is a contract to repurchase and not one providing for a rescission.

*Sales—Contract—Stock—Rescission—Laches.*

3. Where plaintiff contends that the agreement gave him the right to rescind, he will be estopped from asserting his claim on that basis where the evidence shows that he became dissatisfied in July, 1923, but did not attempt to rescind until October, 1925, when he wrote a letter for that purpose to defendant.

*Assumpsit* for price of stock. C. P. No. 5, Phila. Co., Dec. T., 1925, No. 1572.

*F. L. Clark*, for plaintiff; *W. H. Hepburn*, for defendant.

HENRY, P. J., 52nd judicial district, specially presiding, June 14, 1927.— This suit was brought for the recovery of the price paid for stock in a corporation, purchased by the plaintiff from the defendant, under an alleged agreement to repurchase in the event of the plaintiff being dissatisfied. This alleged contemporaneous agreement to repurchase was denied by the defendant.

The jury returned a verdict in favor of the plaintiff for $10,000, the purchase price of the stock.

At the trial, the defendant submitted a point asking for binding instructions in his favor, which was refused.

The defendant now moves for judgment *non obstante veredicto*, and has taken a rule for a new trial.

The plaintiff contended, and still contends, that the alleged contemporaneous agreement was, not to repurchase the stock sold to the plaintiff by the defendant, but a right to rescind in the event of the buyer being dissatisfied with his purchase; and it is upon this theory that the case was tried. To sustain this position, the plaintiff relies upon Laubach *v.* Laubach, 73 Pa. 387; Roberts *v.* Cauffiel, 283 Pa. 64, and Davis *v.* Cauffiel, 287 Pa. 420. It is to be noted, however, that in all these cases the contemporaneous agreement, which was the inducement for the purchase, was to take back the stock should the plaintiff so desire, and "repay the sum paid for it," or language to the same effect. In these cases the terms were specific. All the essentials of a contract were present, the time of performance being the time when the buyer elected to rescind, it being likened to a purchase with the privilege of trial, with the right to rescind in the event of the trial not being satisfactory. The agreement to return the price of purchase is persuasive of the conclusion reached.

In the case under consideration, the alleged promise to repurchase was in these words: "He said that if at any time I wasn't satisfied, he would buy the stock back from me" (page 8, Notes of Testimony), and that the inducement for the purchase of the stock by the plaintiff was, in part, "because he would buy it back from me" (page 15, Notes of Testimony). This language is appropriate to a contract to repurchase and not one providing for rescission. The language used in Laubach *v.* Laubach, *supra*, was appropriate to a rescission and not to a contract to repurchase. In Roberts *v.* Caufiel and Davis *v.* Caufiel, *supra*, the Supreme Court seems to have studiously avoided saying anything about rescission, and these cases are decided upon a contemporaneous contract to repurchase upon specified terms, namely, the price at which originally sold. In a contract to repurchase, it is essential that the purchase price be agreed upon. In the absence of a named price, it is only expressive of a willingness to repurchase at a price to be fixed or agreed upon, and until such agreement upon price is reached, there is no definite and binding contract to repurchase.

Moreover, while the strict rule as to prompt rescission upon the discovery of a fraud may not apply, yet the rescission should be reasonably prompt after the buyer once reaches the point where he is dissatisfied with his purchase; otherwise, he speculates with his contract and right to rescind. By withholding rescission and keeping the seller's liability open, while attempting otherwise to dispose of the stock, the buyer may be prejudicing the seller and his opportunity to dispose of the stock. Assuming the plaintiff's story to be true, there seems to be nothing in this case from the time of the purchase of the stock in June, 1921, to July, 1923, to have required the plaintiff to exercise his right to rescind; but there being no evidence of fraud in the case, and the basis of the right to rescind being dissatisfaction with the purchase, it was the duty of the plaintiff to rescind within a reasonable time after he became dissatisfied with the purchase, and that seems to have been in July, 1923, for on the 9th of that month the plaintiff wrote to the defendant, asking if the defendant knew where the plaintiff could dispose of his stock, followed by the letter of Sept. 20, 1923, where the plaintiff again suggests his desire to dispose of the stock, and asking for the assistance of the defendant in this

direction. But if this were not enough to show that the plaintiff had arrived at the point where he was dissatisfied with his purchase, he again writes to the defendant on Oct. 12, 1923, suggesting the placing of the matter in the hands of an attorney, but trusting that the defendant would help him in the matter. No reason for seeing an attorney appears in this letter, and there is not the faintest suggestion of a rescission or a demand for the return of the purchase price of the stock. If the plaintiff then had any just claim against the defendant, it was his duty then to assert it, and, in the absence of doing so, we take the view that he waived his right to rescind and is estopped from asserting this right in the formal attempt to rescind in the letter to the defendant of Oct. 24, 1925—over two years after the time for definite action had ripened. By thus trifling with his rights, and in fact gambling with his contract to rescind, the plaintiff has lost his right to assert his claim. This last-mentioned letter, while admissible in evidence as an effort at rescission, possibly should have been rejected as too remote from the time when plaintiff should have acted; and it was open to the further objection that the ground for rescission as there set forth is not substantiated by the evidence of plaintiff himself; but the letter does show the time when plaintiff first asserted his claim to have the stock repurchased by the defendant.

We are bound to conclude that there was not sufficient evidence to establish a contemporaneous enforceable contract for the repurchase of the stock or a rescinding and demanding of the return of the purchase money; and even conceding that the evidence would be sufficient, the plaintiff is estopped from asserting his claim by a failure to rescind and demand a return of his purchase money from July, 1923, when he became dissatisfied with his purchase, to October, 1925, when he first took any definite step toward a rescission.

And now, to wit, June 14, 1927, rule for a new trial discharged. The motion of the defendant is allowed and judgment *non obstante veredicto* upon the whole record is directed to be entered in favor of the defendant. An exception to this action of the court is hereby noted for the plaintiff.